UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| RICHARD ALVIN PURDIE, | ) | CASE NO. ED CV 15-2415-CJC (PJW) |
| Petitioner, | ) ) | |
| v. | ) ) | FINAL REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| RAYMOND MADDEN, WARDEN, | ) ) | |
| Respondents. | ) ) | |

This Final Report and Recommendation is submitted to the Hon. Cormac J. Carney, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the Petition be denied and the action be dismissed with prejudice.[1]

---

[1] This Final Report and Recommendation has been issued to correct an error in the initial report: as set forth on pages nine and ten, it was counsel for the co-defendant, not the prosecutor, who elicited the admission at issue in Petitioner's second claim. Because the error did not affect the Court's ultimate conclusion that the claim is meritless, Petitioner was not given another opportunity to file objections.

I.

SUMMARY OF PROCEEDINGS

A.  State Court Proceedings

In 2013, a jury in San Bernardino County Superior Court found Petitioner guilty of first-degree burglary, possession of a firearm by a felon, and four counts of receiving stolen property. (Clerk's Transcript ("CT") 522-27.) After determining that he had two prior "strikes" under California's Three Strikes law and had served six prior prison terms, the trial court sentenced him to 44 years to life in prison. (CT 331-33, 531-32, 601-03.)

Petitioner appealed to the California Court of Appeal, which remanded the case to the trial court with instructions to explain why it had denied Petitioner's motion to strike one of his strikes but, in all other respects, affirmed the judgment in a written decision. (Lodged Document Nos. 3-5.) Petitioner then filed a petition for review in the California Supreme Court, which was summarily denied. (Lodged Document Nos. 6-7.) Thereafter, he filed a habeas corpus petition in the California Supreme Court, which was also summarily denied. (*See* Docket No. 15 at page 3.)

B.  Federal Court Proceedings

In November 2015, Petitioner, proceeding pro se, filed a Petition for Writ of Habeas Corpus in this court, pursuant to 28 U.S.C. § 2254, raising four claims. (Docket No. 1.) Thereafter, he requested leave to amend his Petition to delete two unexhausted claims and to stay the Petition while he exhausted those claims in state court. (Docket No. 11-14.) Prior to the Court ruling on this request, however, Petitioner filed a Second Amended Petition ("SAP"), raising the following claims:

1.  There was insufficient evidence to sustain his conviction for first-degree residential burglary.[2]
2.  Trial counsel was ineffective for failing to have Petitioner's admission excluded from trial.

(SAP at 5-7, Exh. A at 16-45, Exh. B at 8-24.)

## II.

## STATEMENT OF FACTS

The following statement of facts was taken verbatim from the California Court of Appeal's opinion affirming Petitioner's conviction:

> In 2007, Robert Phelps and his wife purchased a home in Running Springs, California. Phelps testified he purchased the home as a vacation property, and that "[w]e (his family) are going up there for New Year's. We go several times in the summer, maybe quarterly." He also testified that beginning in April 2011, he started renting the property "to church groups, youth groups, large families." Phelps explained, "I'm the property manager, as well as the owner. . . ." But regardless of what type of ownership interest prompted his actions, Phelps made weekly visits to the home for the purpose of maintenance, and he effected periodic home improvement projects.
>
> In October 2011, tenants gained access to the home by retrieving a key from a lockbox. At the time, Phelps was overseeing the construction of a roof over a deck at the home. He generally spent the day working at the Running

---

[2] The Court has combined Petitioner's insufficiency claims in Grounds One, Four, and Five into one claim, Ground One.

Springs home, but he returned to his main residence at night.

On the morning of October 21, Phelps came to the property and noticed that someone had pried open the lockbox, grabbed the key, entered the home, and stolen several items, including a projection screen television, a laptop computer, flash drive, and printer, a flat screen television, and various tools. While no one was staying in the property at the time of the break-in, it had been rented the prior week.

In November 2011, [Petitioner], who was then on parole, lived in a mobile home in San Bernardino County. One day, the employees of an automobile repossession company went to [Petitioner's] home to repossess his truck. The employees approached the truck to verify that it was the subject of the repossession. When they did, [Petitioner] came out of his home carrying a shotgun. The employees fled and called 911.

Several deputies from the San Bernardino County Sheriff's Office, including Deputy John Wilson, responded to the call. Wilson knocked on [Petitioner's] front door, but received no response. He heard the sound of footsteps coming from inside and decided to break a sliding glass door to gain entry. Once inside, Wilson saw [Petitioner] standing near the front door. Wilson ordered [Petitioner] to go outside where other officers placed [Petitioner] in handcuffs. Wilson then found Ashley Nicole Brown[3] and a

---

[3] Brown pled guilty to first degree burglary and admitted a prior prison term after the presentation of the evidence, but before

4

1        shotgun in the bedroom.  In front of Brown and [Petitioner],
2        Wilson walked out of the mobile home, held up the shotgun
3        and "made a flippant comment, like: Who does this belong
4        to?"  [Petitioner] told Wilson the gun belonged to him and
5        not Brown, and that he knew it was loaded.

6             During a search of the mobile home, deputies discovered
7        property that had been stolen from Phelps's home (count 13), as
8        well as property belonging to Ronald Fossett (count 10), Mark
9        Posjena (count 11), and Daniel Ramirez (count 12).  The deputies
10       found [Petitioner's] cell phone and a flash drive.  A picture of
11       Phelps's truck was found on the flash drive.  The cell phone
12       yielded several incriminating text messages.  One stated
13       [Petitioner] had "a 12-gauge shotgun" for sale.  Other text
14       messages sent during the days immediately after the Phelps
15       burglary said things like, "[h]ey homey, I'm at the mansion with
16       the projection screen TV."  And, "[g]ot projector.  Got Vizio
17       plus more."  In fact, [Petitioner] provided prices for items
18       taken during the burglaries: "The projector sells for [$1,299];
19       the Vizio, [$649]; the iMac, [$799]; the compressor, [$399]; and
20       the radial arm saw, [$449].  These are the selling prices from
21       the websites."
22  (Lodged Document No. 5 at 1-2 (footnote omitted).)
23                                 III.
24                          STANDARD OF REVIEW
25       The standard of review in this case is set forth in 28 U.S.C.
26  § 2254:

27  ─────────────────────
28  the jury returned its verdict.  She was sentenced to three years in
    prison.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law if it applies a rule that contradicts Supreme Court case law or if it reaches a conclusion different from the Supreme Court's in a case that involves facts that are materially indistinguishable. *Bell v. Cone*, 535 U.S. 685, 694 (2002). To establish that a state court unreasonably applied federal law, a petitioner must show that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but objectively unreasonable. *Renico v. Lett*, 559 U.S. 766, 773 (2010). Where no decision of the Supreme Court has squarely decided an issue, a state court's adjudication of that issue cannot result in a decision that is contrary to, or involves an unreasonable application of, clearly established Supreme Court precedent. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Petitioner raised his claims in his petition for review and his habeas petition in the California Supreme Court, but that court did not explain its reason for denying them. (Lodged Document No. 7; Docket No. 15 at page 3.) The appellate court, however, did (Lodged Document No. 5), which this Court presumes is the basis for the state supreme court's subsequent decisions denying the claims. *Johnson v. Williams*, 133 S. Ct. 1088, 1094 n.1 (2013) (approving reviewing court's "look through" of state supreme court's silent denial to last reasoned state-court decision). In this situation, the Court looks to the appellate court's reasoning and will not disturb it unless it concludes that "fairminded jurists" would all agree that it was wrong. *Richter,* 562 U.S. at 102.

IV.

DISCUSSION

A.  Insufficient Evidence

Petitioner claims that there was insufficient evidence to convict him of first-degree residential burglary of the Phelps's home because it was rental property and was not occupied when he burglarized it. (SAP, Exh. A at 21-27.) He contends that Phelps's testimony that he also used the property as a vacation home was not enough to establish that it was "inhabited" at the time of the break-in, which he points out is required under state law. (SAP, Exh. B at 11-15.) He argues that, as a result, his first-degree burglary conviction should be reduced to second-degree burglary.[4] (SAP, Exh. B at 16-23.)

---

[4] Under California law, to convict on first-degree residential burglary the prosecution must establish that the residence was inhabited. Cal. Penal Code § 460; *People v. Anderson*, 47 Cal.4th 92, 101 (2009).

7

This claim is not really an insufficiency claim. Petitioner is not challenging the strength of the prosecution's evidence; he is, instead, challenging the state court's application of state law to that evidence. Such a claim is not cognizable in habeas corpus because, to begin with, the Court is bound by the state court's interpretation of state law and may not substitute its judgment for the state court's on interpretations of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Further, federal habeas corpus does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). For these reasons, this claim is denied.

Further, even were the Court empowered to address the merits of Petitioner's argument, it would side with the state appellate court. In denying Petitioner's claim on direct appeal, the court explained:

> [T]he Phelps's property, which was both a short-term rental and a vacation home, had all the indicia of habitation when [Petitioner] entered without permission. Phelps had turned on the utilities, and moved personal property into the house. He used the home for vacations before the burglary, and intended to use it as such in the near future. Phelps not only provided the home with the utilities and possessions suitable for use by short-term residents, but also for the use of his own family. He maintained the home, and made periodic home improvements.
>
> [Petitioner] fails to persuade us that the periodic occupancy of the home by people unrelated to owner, and paying for the privilege, should somehow render it

>     unoccupied under the burglary statutes the moment the most
>     recent renter decamps. No case has so held and the argument
>     is illogical. Especially, when as here, the owner intends
>     to use the home and periodically does so. Finally, there is
>     no evidence that Phelps's ever permanently ceased to use
>     their second home, and their intermittent occupancy was with
>     the express intent to return in the future. Consequently,
>     substantial evidence supports the first degree burglary
>     conviction.

(Lodged Document No. 5 at 4.)

The Court agrees. There is no merit to Petitioner's argument that the fact that the family periodically rented the property to third parties disqualifies it as a vacation home for purposes of the statute. As such, this claim is denied.

B.   <u>Ineffective Assistance of Counsel</u>

Petitioner claims that his trial counsel was ineffective for failing to object before counsel for the co-defendant elicited testimony from a police officer that Petitioner had admitted at the scene that the shotgun found in his home belonged to him. Petitioner contends that this admission was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and should have been excluded from trial. (SAP, Exh. A at 31-45.) Though the Court would agree that counsel should have prevented this testimony from coming into evidence, Petitioner is not entitled to relief on his ineffectiveness claim because, had the admission not been introduced at the trial, Petitioner would still have been convicted.

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must establish that counsel's performance fell

below an "objective standard of reasonableness" under prevailing professional norms and that the deficient performance prejudiced the defense, i.e., "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).

At trial, Deputy Wilson testified that, when he got to Petitioner's trailer home, he ordered Petitioner out of the trailer. Petitioner was placed in handcuffs and made to sit down outside. (RT 338-39.) Wilson explained that he then found co-defendant Brown standing in a bedroom, several feet away from a shotgun, and she was taken outside and made to sit down also. (RT 340, 356-57.) Wilson testified that he then retrieved the shotgun, brought it outside, and asked who it belonged to. Petitioner admitted that it was his. (RT 358.) Counsel for co-defendant then asked Wilson whether Petitioner told him that the gun was loaded. (RT 358.) Before he could answer that question, Petitioner's counsel objected to Wilson's testimony about Petitioner's admission that the shotgun was his, arguing that the statement was inadmissible because it was obtained in violation of *Miranda*. Counsel moved for a mistrial. (RT 359-61.) The trial court ultimately agreed that the statement should not have come into evidence and admonished the jury to "disregard the testimony of Deputy Wilson regarding any statements [Petitioner] said to him and do not consider those statements in any way. Those statements were not admissible under the law and cannot be considered by you for any purpose." (RT 397, 401.) The court denied counsel's motion for a mistrial.

1    Petitioner claims that his counsel was ineffective for allowing
2 the admission into evidence in the first place.  In rejecting this
3 claim, the California Court of Appeal found that counsel's failure to
4 prevent the jury from hearing the admission did not constitute
5 ineffective assistance because there was no prejudice:

> [T]here was overwhelming evidence of [Petitioner's] gun
> possession without his admission of ownership.  The
> substantial evidence is the fact he used a shotgun to scare
> the employees who came to repossess his car, and the gun was
> found in [Petitioner's] residence.  The week before he was
> arrested [Petitioner] also sent a text message about selling
> a 12-gauge shotgun.  Consequently, while [counsel's] failure
> to properly address the *Miranda* issue may have been below an
> objectively reasonable standard of performance, there was no
> prejudice to [Petitioner], and hence no justification for a
> reversal of the judgment.

(Lodged Document No. 5 at 5.)

   The Court agrees.  There was substantial evidence that Petitioner possessed the shotgun beyond his admission that it was his.  It was found on the floor of his home.  (RT 356.)  A witness testified that he brandished it a week earlier when he tried to prevent the witness from repossessing his car.  (RT 191-92, 198-99, 202-03.)  And Petitioner had tried to sell a shotgun, presumably the same one found in his home, a week before police found it in his home.  (RT 245-46, 253, 936-38.)  Thus, the state courts did not err in concluding that the admission of this testimony did not prejudice Petitioner.  This is particularly true in light of the fact that the trial court instructed the jury to disregard Deputy Wilson's testimony that Petitioner had

admitted that the shotgun was his and the Court presumes that the jury followed that instruction. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). For these reasons, there is no reasonable probability that, but for counsel's mistake, Petitioner would not have been convicted of possessing the shotgun. *See Strickland*, 466 U.S. at 687-88. Accordingly, this claim, too, is denied.

V.

RECOMMENDATION

For these reasons, IT IS RECOMMENDED that the Court issue an Order (1) accepting this Final Report and Recommendation, (2) denying a Certificate of Appealability, and (3) directing that Judgment be entered denying the instant Petition and dismissing the case with prejudice.

DATED: December 22, 2016.

_____
PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-State Habeas\PURDIE, R 2415\FinalR&R.wpd